WOLCOTT *against* JOHNSON.

After the decision of a court of review, on application of the creditor, against the right of an imprisoned debtor to the benefit of the oath, a justice of the peace, on a fresh application of the debtor, without proof of any change in his circumstances, may lawfully administer the oath to him.

This was an action on the case, against the defendant, as sheriff of *Tolland* county, for the escape of *Ebenezer Allen,* jun. from gaol.

*Allen* took the oath provided by law for poor imprisoned debtors, in *July,* 1819, before a justice of the peace, after due notice to the plaintiff. In *June,* 1820, a court of review was regularly called and held, after due notice to *Allen;* and after hearing the evidence on both sides, that court decided, in conformity to the claim of the plaintiff, that *Allen* had conveyed his real estate to defeat and defraud his creditors, and ordered his support to cease. This order was published at the gaol, where *Allen* was confined, in the hearing of him and of the gaoler. In *September* following, after due notice to the plaintiff, *Allen* appeared before *Elisha Edgerton,* Esq. a justice of the peace, at the gaol, who, with notice of the previous proceedings, administered to him the oath; and soon afterwards, no money having been left for his support, he left the limits of the prison, when the writ in this case was served upon the defendant. There was no change with respect to the conveyance of the estate, nor any new consideration received by *Allen* for it, between the time of holding the court of review and administering the oath by justice *Edgerton.* No fact was proved, by *Allen*, to justice *Edgerton,* in addition to, or different from, the evidence before the court of review. The execution, officer's fees and money advanced for the support of *Allen* previous to the court of review, amounted to 154 dollars, 66 cents.

A case, of which these were the material facts, being agreed to, by the parties, was reserved for the advice of all the Judges.

*T. S. Williams* and *Scarborough,* for the plaintiff, contended, 1. That the justice had not power to administer the second oath, having no jurisdiction of the subject matter. The statute does not, in terms, empower a prisoner, in any case, to make a second application to a single magistrate. Where the oath is refused, *in the first instance,* a second application to a single magistrate, is expressly inhibited. *Stat.* 366. *tit.* 81. *c.* 1. *s.* 12. And it is

*Hartford,*
*June,*
1824.

Wolcott
*v.*
Johnson.

contrary to the first principles of jurisprudence, and to all the analogies of the law, to empower one magistrate to take cognizance of the same subject matter, and pass upon it anew, which another magistrate, of co-ordinate authority, has already determined. The law does not thus authorize the erection of altar against altar. Will it be presumed, then, that the law has authorized a single magistrate to contravene the decision of a *higher* court? This would be still more absurd. If this were permitted, it would involve the parties in a course of litigation and expense as useless as it would be endless. The provision of the statute (*sect.* 13.) that after the decision of the court of review against the prisoner, he shall " be holden in prison in the same manner as though the oath had never been administered," does not mean, that he may take the oath before a justice, and be discharged, in the same manner as though no decision of a court of review had been had.

2. That if a single magistrate has power, in *any* case, to administer the oath, after it has been refused, by a court of review ; yet there was no foundation laid, in *this* case, for the exercise of such power, as it did not appear that there had been any reconveyance of the property fraudulently conveyed, or that the fraud was in any way purged, or that there had been any change in the prisoner's circumstances.

3. That if the justice had no power to administer the oath in question, the sheriff is liable for the prisoner's escape, in the same manner he would have been, if the prisoner had escaped without taking the oath.

*J. Trumbull* and *A. Smith,* contra, contended, 1. That the oath may be lawfully administered, by a justice of the peace, to an imprisoned debtor, after it has been refused by a court of review. First, there is no statute provision limiting the power to an original application. Secondly, it is not so limited, because the subject matter has passed in *rem judicatam.* The only proper subject of enquiry before the court of review, is, whether the prisoner is *now* entitled to the benefit of the oath. If he makes a subsequent application, he of course presents a *new case.* Besides, this is not strictly a judicial proceeding. Thirdly, public policy does not require such limitation. The object of the law is not to *punish* the debtor, but to compel him to *surrender his property.* Whenever this object ceases to be attainable, policy and humanity both require, either that he should be discharged, or that the creditors should support him.

If the statute were susceptible of different constructions, it ought certainly to receive that which is most favourable to personal liberty. Fourthly, the statute positively provides, that after the court of review have ordered the prisoner's support to cease, he shall " be holden in prison in the same manner as though the oath had never been administered." If he is to be holden as before, he may, at any time, apply for the benefit of the oath, giving the requisite notice.

2. That if, under *any* circumstances, the oath might have been administered, after the decision of the court of review, this Court cannot say, that the justice did wrong. If he was not precluded from acting at all upon the subject matter, he must now be taken to have exercised his jurisdiction soundly. But to maintain this action, the plaintiff must shew, not only that the decision of justice *Edgerton* was erroneous, but that his acts were void.

HOSMER, Ch. J. Whether the departure of *Allen* from the gaol limits, was an escape, is the general question for determination ; and that depends exclusively upon the validity of the jurisdiction exercised by justice *Edgerton*. It matters not how palpable may have been his mis-determination, if he had cognizance of the application made to him, by the imprisoned debtor. His decision cannot, if he were authorized to pronounce one, be collaterally examined ; but the creditor, if dissatisfied, should have subjected it to a court of review. So long as the justice remained within the lines of his jurisdiction, the sheriff could take no other legal course, than by yielding a prompt obedience to his determination.

The jurisdiction of the justice is too clear to admit of a serious question. In every civil action or matter, if an imprisoned debtor can and will take, before a justice of the peace, the oath provided by law for poor debtors, he shall be retained at the expence of the creditor for his support, or be released from prison. To this general proposition there is no exception, so far as relates to *Allen*, unless it be found in the 13th section of the law. *Stat.* 366. *tit.* 81. *c.* 1. ed. 1808. By this section a court of review is established, to re-examine the decision of any justice, who shall have allowed and administered the oath ; and if legally requisite, to vacate the proceeding, by ordering the support of the debtor to cease. The consequence of this determination is declared by law to be, that " such debtor shall thence-forward be holden in prison, *in the same manner* as

though said oath had never been administered." This, be it observed, is the only effect resulting from the decision of the court of review. During the debtor's imprisonment before the oath is administered, he is obliged to support himself; but after the administration of the oath, the burden of his support is cast on the creditor. Relieve the creditor from this burden, and the debtor remains in prison, *in the same manner* as he did before the oath was administered. There is no occasion for recurrence to the benign rules of construction applicable to provisions founded in humanity, and intended to protect the debtor from oppression; for the words of the law are of unequivocal import, and free from all possible ambiguity.

It was insisted in the argument, that the determination of the court of review not only relieved the creditor from the expence of supporting his debtor, but inhibited his future application for the benefit of the oath, unless on some new ground. Not a word or intimation in the statute, gives countenance to this remark. The observation is founded on the supposed inequitable consequences attending a different construction. But what are the consequences referred to? It is said, they are the trouble and expence, which may attend the repeated applications of the debtor. These, I admit, are possible; but, in my opinion, they are much over-rated. The debtor, if the jurisdiction of a justice be soundly exercised, has little inducement, unless on new and sufficient grounds, to make a fresh application, which will be met, and most probably put down, by the prior decision. But, on the other hand, if the law is to receive a construction against its general provisions, and in defiance of language the most intelligible and explicit, in order to prevent a remote and barely possible inconvenience, it must extend to all cases. The court cannot, on any sound principle of construction, give to the *same words* a different exposition, according to the nature of the subsequent controversy. The construction must be uniform, because it is founded on the same premises. Now, can it rationally be conceived, that an imprisoned debtor, who once has received the oath, and on review had the proceeding reversed, is, by law, intentionally interdicted from any future application for it, although he is unquestionably reduced to the most abject penury? If this be so, then the legislature must have contemplated, and approved of, cases of this nature. An imprisoned debtor, whose sole property was a ship at sea, applies to a justice for the oath, and receives it; but on review, his support at the creditor's expence, is ordered to cease. Af-

Hartford,
June,
1824.

Wolcott
*v.*
Johnson.

*Hartford,*
*June,*
*1824.*

Wolcott
*v.*
Johnson.

ter this proceeding, the ship is whelmed in the ocean, and the debtor has neither property nor hope. He again makes application; but the boon of a support in prison, by the creditor, is denied him. I can never admit, that such denial is conformed to the intention of the legislature, so opposite as it is to the principles both of reason and humanity This opinion is abundantly confirmed, by other parts of the statute, and by the reason and spirit of its entire provisions; but I forbear to comment upon them, as being entirely unnecessary.

The imprisonment of a debtor is not intended to be a punishment, but is a reasonable mode of coercing the payment of a debt. In addition to the privation of liberty, the debtor ought not to suffer oppression; and, if really poor, it is sufficient, that the creditor, in the hope of bringing property from its concealment, should have the power of retaining the prisoner at the expence of supporting him.

If the statute concerning the imprisonment of debtors, is imperfect or inequitable, it belongs to the legislature to correct it. But the courts cannot outrun the intention, which they have clearly communicated, by the most unequivocal language.

I am of opinion that the plaintiff is not entitled to a recovery.

BRAINARD and BRISTOL, Js. were of the same opinion.

PETERS, J. dissented.

Judgment to be rendered for defendant.